IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 25, 2005 Session

## THOMAS ALVIN CARTER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Monroe County**
**No. 04-002     Carroll L. Ross, Judge**

───────────────

**No. E2005-00625-CCA-R3-PC - Filed January 23, 2006**

───────────────

The petitioner, Thomas Alvin Carter, appeals from the Monroe County Criminal Court's dismissal of his petition for post-conviction relief from his guilty plea to theft over $500 but less than $1000, a Class E felony. He contends that his guilty plea was unknowing and involuntary and that he received the ineffective assistance of counsel. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Robert L. Jolley, Jr., Knoxville, Tennessee, for the appellant, Thomas Alvin Carter.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Charles W. Pope, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case arises from the petitioner's conviction for theft of a Mercury Marquis from a Wendy's parking lot in Monroe County. On June 9, 1999, the victim saw his car being driven out of the parking lot but could not identify the thief. Officers later recovered the car in Blount County, and a fingerprint expert matched fingerprints found in the car to the petitioner. Officers located the license plate from the victim's car on another car in Roane County, in which they also found items belonging to the petitioner. The items included a cell phone application and a letter to "Tommy."

A Monroe County grand jury indicted the petitioner on two counts, including one count of a Class E felony and one count of theft over $1,000, a Class D felony.[1]  Pursuant to a plea agreement negotiated on the day the petitioner's case was set for trial, the state entered a nolle prosequi to the Class E felony and the petitioner pled guilty to one count of theft over $500 but less than $1000, a reduced charge from the theft over $1,000.  The petitioner agreed to a three-year sentence as a Range II offender, consecutive to an eight-year sentence he was serving in another case.

At the guilty plea hearing, the trial court informed the petitioner about his constitutional right 1) to a jury trial, 2) to appeal if he went to trial, 3) to call witnesses on his own behalf, 4) to confront and cross-examine witnesses against him, 5) to have the court issue subpoenas compelling the attendance of witnesses, 6) to remain silent or to testify, and 7) to force the state to prove every element of the crime beyond a reasonable doubt.  The assistant district attorney announced the plea agreement and gave the factual basis for the plea.  The trial court asked the petitioner if he was satisfied with the plea and if he wanted to enter into the agreement.  The petitioner stated he was satisfied with the agreement and wanted to enter the plea.  The petitioner acknowledged that his attorney represented him and that his attorney had explained his rights and the agreement to him.

On December 29, 2003, the petitioner filed a petition for post-conviction relief alleging that he entered his guilty plea involuntarily and that he received the ineffective assistance of counsel.

After appointment of counsel, the petitioner filed an amended petition alleging one additional ground: that the petitioner did not knowingly enter his guilty plea because his attorney did not inform him about his sentencing options.

At the post-conviction hearing, the petitioner testified that the trial court had appointed him an attorney.  He said his attorney filed a motion seeking to withdraw from representing him before he entered his guilty plea.  He said that he and his attorney never got along and that he was happy when his attorney filed the motion because he thought he would get a new attorney.  He said the trial court told him that he could hire his own attorney if he wanted a new one but that the court would not appoint him another attorney.  He said the attorney continued to represent him "under force."

The petitioner testified that just before his trial was to begin, his attorney told him about some officers who saw the stolen car being driven down the interstate with two people in it.  He said the attorney never investigated the allegation because he did not know about it until the day of trial.  He said his attorney talked to him very little about the evidence in the case and coerced him into accepting the plea because then they could "get it over with."  He said that if the court would have given him another attorney, he would have proceeded to trial.  The petitioner said that although his

[1]Because the record on appeal does not include a copy of the indictment, a copy of the plea agreement, or copies of the judgments, we do not know what the indictment for the first count charged.  However, the transcript of the post-conviction hearing contains a statement by the attorney that one of the offers he had written down was "'shoplifting;' . . . 'count one, class E, two years at 35%, $700.00 restitution . . . 'Theft of car,' . . . Count two, class D, four years to serve and restitution.'"  Based on the record before us, we believe the first count charged theft over $500 but less than $1,000, a Class E felony.

attorney had recommended he go to trial, he decided to take the plea because he did not trust the attorney. He said he did not trust his attorney because he did not communicate well with him and because the attorney thought he was guilty. He also said he was not capable of representing himself.

The petitioner testified that his attorney did not explain to him what it meant to be a Range II offender. He said he should have been sentenced as a Range I offender because he had only been in trouble once before this arrest, when he was convicted of auto thefts ten years ago. He said he entered the guilty plea because his attorney was not prepared for trial and he could not represent himself. He said he would have gone to trial if he had been confident in his attorney. He said that he was not aware of any evidence connecting him to the stolen car in Monroe County and that his attorney never discussed venue with him. He said his attorney only told him he was facing a sentence of twelve years or more at sixty percent.

On cross-examination, the petitioner testified that the first prosecutor and first defense attorney involved in his case were removed from the case because they "had attitude problems." He said he entered the plea because it was much better than the twelve years at sixty percent he would have received had he gone to trial. He acknowledged speaking to the assistant district attorney about the plea on the day his trial was scheduled to begin but asserted the assistant district attorney initiated the conversation. He admitted he knew about the fingerprint evidence before the trial date. He acknowledged he entered the plea against the advice of his attorney, but he said it was because he could not trust him.

On redirect examination, the petitioner testified that he had "fired" his attorney a dozen times. He said the attorney told him he had to stay on the case until the trial court told him otherwise.

The attorney testified that he had worked in the public defender's office for twelve years. He took the petitioner's case after being approached by the Public Defender because the Public Defender and the petitioner were not getting along. He said he communicated with the petitioner at the courthouse and through letters. He said the petitioner was uncooperative in preparing his defense.

The attorney testified that he did not recall any new evidence being disclosed the day of trial. He said Officer Scott Webb's offense report was part of the discovery he initially received. He said that it was his practice to go over discovery with every client and that he went over discovery with the petitioner. He said he did not know the name of the Loudon County deputy who saw the stolen Mercury Marquis on the interstate but he did talk to Officer Scott Webb, who wrote the offense report, about the statements by the Loudon County deputy. He said he did not believe the description given by the Loudon County deputy matched the petitioner, because the petitioner was age thirty-five at the time of the offense and the deputy described the people in the car as two white males between the ages of eighteen and thirty. He said he requested exculpatory evidence from the state but never received the name of the deputy. He said he filed a motion to withdraw as petitioner's counsel because the petitioner had threatened to kill him. He said he did not have animosity toward the

petitioner and wanted the case to go to trial. He said he told the petitioner the state filed notice that he was a career offender. He said he went over the convictions listed in the state's notice with the petitioner but did not remember the date that he did. He said that after looking over the notice, he thought the state could argue that the petitioner was a Range III offender but that he did not remember discussing it with the petitioner. He said every time he discussed the case with the petitioner, the petitioner told him he wanted to go to trial.

The attorney testified that on the day set for the trial to begin, August 19, 2003, the petitioner asked to speak to the assistant district attorney. He said he advised the petitioner against speaking to the assistant district attorney but the petitioner yelled down the hallway to the assistant district attorney, "What's your best offer?" He said he told the petitioner they should try the case but that the petitioner said he was an idiot and the petitioner was not going to listen to him. The attorney said the state made an offer to the petitioner and the petitioner responded, "Deal." He said that he did not discuss the offer with the petitioner but told him it was not a good offer. He also said that in August 2002, the previous attorney for the state offered the petitioner four years to run concurrently with his other sentences but the petitioner rejected it. He said he never informed the court that the petitioner worked out the plea offer himself. He said he did discuss the plea forms, the petitioner's rights, and the total range of punishment with the petitioner.

On cross-examination, the attorney acknowledged that the assistant district attorney talked with the petitioner and him only after the petitioner requested it. He said he believed the petitioner knowingly entered the plea. He said he thought the petitioner was knowledgeable about the plea proceedings. He said the petitioner enjoyed coming to court because he could put on a show.

Following the post-conviction hearing, the trial court dismissed the petition for post-conviction relief. Regarding the voluntariness of the plea, the trial court found the petitioner was fully aware of the charges, signed all the necessary paperwork, initiated the plea, and entered it voluntarily. The trial court also found the plea represented a "voluntary and intelligent choice among the alternative courses of action open to the [petitioner]." Regarding the ineffective assistance of counsel, the trial court found the petitioner offered no evidence at the hearing to support his contentions that he was prejudiced by his attorney's performance and that he would not have pled guilty and would have gone to trial. The trial court noted that against his attorney's advice, the petitioner called out to the assistant district attorney in the hallway before trial and asked for his best offer. The trial court also noted that the attorney wanted to take this case to trial but that the petitioner insisted they negotiate a plea. The trial court found that no newly discovered evidence existed that could have made a difference in the petitioner's plea.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with

-4-

no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

## I. GUILTY PLEA

The petitioner contends that he entered his guilty plea unknowingly and involuntarily because he was not "represented" by counsel and did not receive Faretta warnings. See Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525 (1975). He also contends the plea was unknowing and involuntary because on the day of his plea, he received new information about a Loudon County deputy, who had seen two individuals in the stolen car. He asserts he was unable to make an investigation into the Loudon County deputy's statements. He also contends he received no information about sentencing. The state asserts that the petitioner fully understood the plea agreement and the sentence that he would receive. The state also asserts the petitioner's attorney properly advised the petitioner about the sentencing ranges. The state contends the transcript of the guilty plea hearing shows the petitioner voluntarily and knowingly entered his guilty plea.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). The circumstances include

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." Id.

The trial court is charged with determining if the guilty plea is "knowing" by questioning the defendant to insure that he or she fully understands the plea and its consequences. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999); Blankenship, 858 S.W.2d at 904. In Boykin v. Alabama, the United States Supreme Court stated that certain constitutional rights are implicated in a plea of guilty, namely, the right to a trial by jury, the right to confront witnesses, and the privilege against compelled self-incrimination, and that it would not presume a waiver of these three important rights from a silent record. 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Rule 11(c) of the Tennessee Rules of Criminal Procedure outlines advice to be given to a defendant entering a plea and explicit

procedures for ensuring on the record that guilty pleas are voluntarily and understandingly made. However, only the constitutionally grounded rights stated in <u>Boykin</u> are addressable, per se, under the Post-Conviction Procedure Act. <u>See</u> <u>State v. Prince</u>, 781 S.W.2d 846, 853 (Tenn. 1989).

### A. Failure to Warn

The petitioner contends that he entered his guilty plea unknowingly and involuntarily because he did not have the assistance of counsel. He claims his lack of trust in his attorney, conflict with his attorney, his attorney's request to the trial court to be removed from the case, and his attorney's insufficient investigation equated to the defendant being without representation. He claims he chose to proceed pro se without being questioned about giving up his right to counsel in violation of <u>Faretta</u>. He claims that because his attorney was not an effective advocate, he proceeded pro se and entered his plea unknowingly and involuntarily. The state contends that the petitioner knowingly and voluntarily entered his guilty plea.

A criminal defendant has a right to be represented by counsel under both the United States and Tennessee Constitutions. <u>See</u> U.S. Const. Amend. VI; Tenn. Const. art. I, §9. A criminal defendant also has a Sixth Amendment right to proceed pro se. <u>Faretta</u>, 422 U.S. at 819, 95 S. Ct. at 2533; <u>State v. Northington</u>, 667 S.W.2d 57, 60 (Tenn. 1984). In order to invoke the right to proceed pro se, a defendant must meet three requirements: 1) the defendant must timely assert the right to self-representation, 2) the request must be clear and unequivocal, and 3) the defendant must knowingly and intelligently waive the right to the assistance of counsel. <u>State v. Herrod</u>, 754 S.W.2d 627, 629-30 (Tenn. Crim. App. 1988). Rule 44(a) of the Tennessee Rules of Criminal Procedure states that "[e]very indigent defendant shall be entitled to have assigned counsel in all matters necessary to the defense and at every stage of the proceedings, unless the defendant executes a written waiver."

The following colloquy relating to the petitioner's claim that he was not represented by counsel occurred at the petitioner's guilty plea hearing:

> THE COURT: For the record, you're represented by [counsel], is that correct?
>
> [PETITIONER]: Right, right.
>
> . . . .
>
> THE COURT: Sir, you're represented by [counsel]. Are you satisfied with this plea that he's worked out this morning?
>
> [PETITIONER]: Yeah, yeah, I am.

In Pryor v. State, the petitioner informed the court that he wanted the two attorneys on his case removed and to be appointed new counsel, but he never requested to proceed pro se. 632 S.W.2d 570, 570 (Tenn. Crim. App. 1982). This court concluded the petitioner never requested to proceed pro se. Id. "A trial judge is not required sua sponte to advise an accused of his right to self-representation." Id. The petitioner's "assertion must be unequivocal." Id. (emphasis added). The record reflects the petitioner never requested to proceed pro se and never filed a written waiver of his right to representation. The petitioner is not entitled to relief on this issue.

### B. Exculpatory Evidence

The petitioner contends that he entered his guilty plea unknowingly and involuntarily. He asserts that on the day set for trial, the state disclosed information about a Loudon County deputy who had seen two individuals in the stolen car ten minutes after the victim reported it stolen. He asserts that although he was unable to investigate this evidence, it would have shown that he did not commit the theft. He also asserts that if the information had been investigated, he would have gone to trial. The state contends that the petitioner's plea was knowing and voluntary. It asserts that the petitioner's attorney received the offense report with the Loudon County deputy's statements in discovery and that the petitioner's attorney went over discovery with the petitioner. We agree with the state.

The petitioner presents this issue as an involuntary guilty plea claim but then addresses it as a claim for the ineffective assistance of counsel. We will address this issue as an ineffective assistance claim subsequently but will first address the issue of whether the guilty plea was voluntary and knowing.

The substance of the petitioner's position appears to be that the timing of the disclosure of the Loudon County deputy's observations resulted in the petitioner making an unknowing decision in pleading guilty. However, the petitioner's attorney testified he received Officer Scott Webb's report containing the statements made by the Loudon County deputy with discovery. The petitioner's attorney also testified he went over discovery with the petitioner well before the day set for trial. Though the petitioner disputed that his attorney informed him about the Loudon County deputy, he admitted that he had knowledge of it before entering his guilty plea.

At the guilty plea hearing, the petitioner told the trial court that he knew he was testifying under oath and that he understood his right to a jury trial, right to subpoena and confront witnesses against him, and right against self-incrimination. The petitioner said he was entering the plea of his own free will and had not been threatened or promised anything. He said he understood the plea agreement that his attorney went over with him. Only the constitutional rights stated in Boykin are addressable under the Post-Conviction Procedures Act. See Prince, 781 S.W.2d at 853. The record reflects that the Boykin requirements were satisfied. We conclude that the petitioner's guilty plea was knowing, voluntary, and intelligent. The petitioner is not entitled to relief on this issue.

C. Sentencing

The petitioner contends that he entered his guilty plea unknowingly and involuntarily because he received no information on sentencing. The petitioner asserts his attorney failed to investigate his prior criminal record to determine his classification range. The petitioner also asserts that his attorney and the state told him that he would face a twelve-year sentence as a career offender if he went to trial. The state contends that the petitioner's plea was knowingly and voluntarily entered. The state asserts the petitioner understood the guilty plea proceedings and was fully advised by his attorney about the plea agreement and the ramifications of the plea.

The petitioner also presents this issue as an involuntary guilty plea claim but then addresses it as a claim for the ineffective assistance of counsel. We will address this issue as an ineffective assistance claim subsequently but will first address the issue of whether the guilty plea was voluntary and knowing.

The transcript of the guilty plea hearing reflects that the trial court did not inform the petitioner about the minimum and maximum penalties of his charge. However, the plea petition contained the range of punishment and the petitioner acknowledged going through the petition with his attorney and understanding it.

> THE COURT: Sir, I've now been submitted several documents purporting to contain your signature. Have you gone over these documents with your attorney?
>
> PETITIONER: Uh-huh (affirmative).
>
> THE COURT: For the record, you're represented by [counsel], is that correct?
>
> PETITIONER: Right, right.
>
> THE COURT: Sir, do you read and write okay?
>
> PETITIONER: Yeah.
>
> THE COURT: Okay. Did you understand what he went over with you?
>
> PETITIONER: Yes, sir, I did.
>
> THE COURT: Is this your signature on these documents?

PETITIONER:        Yes, sir, it is.

The petitioner's attorney testified at the post-conviction hearing that he explained the ranges of punishment to the petitioner while going through the plea petition before the petitioner entered his plea.

> A:    Right here (indicating) on the third page, I believe it is, the third page, it talks about the range of punishment.
>
> Q:    And what range did you put down?
>
> A:    I put down for theft over 1000, the range of punishment, "Two to four years at 30% to 12 years at 60%."
>
> Q:    Okay. Meaning that [the petitioner] could face 12 years at 60%.
>
> A:    That was, you know, at range I it's two to four years at 30%. The top of the range is 12 years at 60%.

Based on the totality of the circumstances, we conclude that the petitioner was informed about the sentencing ranges for this offense, that he represented to the court that he understood the plea agreement, and that he voluntarily entered the guilty plea. The petitioner has failed to prove by clear and convincing evidence that his guilty plea was involuntary or unknowing. The petitioner is not entitled to relief on this issue.

## II.  THE INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that he received the ineffective assistance of counsel, thereby rendering his guilty plea unknowing and involuntary. He asserts his attorney did not investigate a potential witness or the petitioner's sentencing range and failed to inform him about sentencing. The state contends the petitioner failed to prove his attorney's performance was deficient.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show that 1) counsel's performance was deficient and 2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. The Strickland standard has been applied to the right to counsel under Article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). When a petitioner

claims that the ineffective assistance of counsel resulted in a guilty plea, the petitioner must prove that counsel performed deficiently and that but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. The court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Baxter, 523 S.W.2d at 936. Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

In its order denying the petition for post-conviction relief, the trial court stated:

> The court finds that the Petitioner offered no evidence at his hearing that would support his contention that "he was actually prejudiced by his attorney's performance, [and] that but for the counsel's ineffectiveness that guilty plea would not have been agreed to."

> It bears mentioning once again that it was the Petitioner, against counsel's advice, who called out to the state in the hallway before trial and asked them for their best offer. Further last minute negotiations then occurred, which resulted in the plea being accepted by the Petitioner.

A. Exculpatory Evidence

The petitioner contends that the state did not disclose Officer Scott Webb's offense report until the day he entered his plea and that his attorney failed to investigate the information other than to confirm the report had been made. The petitioner asserts the information in the report showed he did not commit the theft in Monroe County. The state contends that the petitioner failed to prove by clear and convincing evidence that his attorney's performance was deficient. It asserts the attorney discussed discovery with the petitioner, requested exculpatory evidence, and wanted to take the case to trial.

When a petitioner contends that his trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. Black v. State, 794 S.W.2d 752, 757-758 (Tenn. Crim. App. 1990). This is the

only way for a petitioner to prove by clear and convincing evidence that "the failure to discover or interview a witness inured to his prejudice" or that the failure to "call the witness to the stand resulted in the denial of critical evidence." See id. at 757. Neither the trial court nor this court may speculate on what a witness's testimony might have been if introduced by counsel. Id. The record is devoid of any testimony by either Officer Scott Webb or a Loudon County deputy. Therefore, the petitioner has failed to prove by clear and convincing evidence that he was denied critical evidence, and he is not entitled to relief.

### B. Sentencing

The petitioner contends that his attorney failed to investigate his criminal record and was unfamiliar with his sentencing range. He contends his attorney and the state advised him that if he went to trial he would be facing a sentence of twelve years as a career offender. He asserts this offense occurred before the case for which he was serving an eight-year sentence. He also asserts his only other arrests occurred ten years before this case. The state contends that the petitioner failed to prove by clear and convincing evidence that his attorney's performance was deficient. It asserts the attorney advised the petitioner of the state's notice to seek enhanced punishment.

The record reflects that the state gave notice it would seek enhanced punishment because the petitioner was a career offender. The record also reflects the petitioner's attorney discussed the notice for enhanced punishment with the petitioner. However, the petitioner's attorney testified he could not recall discussing the petitioner's actual range with him but believed the state could argue that he was a Range III offender. The record reflects that before entering his plea, the petitioner's attorney explained to him the sentencing ranges for a Class E felony, which were listed on page three of the plea petition. The petitioner was sentenced to three years as a Range II offender. The only evidence presented at the post conviction hearing about the petitioner's actual classification range included: 1) the attorney's testimony that the state had filed notice that it would seek enhanced punishment because the petitioner was a career offender, 2) the attorney's testimony that he believed the state could have argued the petitioner was a Range III, persistent offender, and 3) the petitioner's testimony that he believed he was a Range I, standard offender.

At the post conviction hearing, the petitioner testified about his prior criminal record.

THE COURT:       What were your prior, what was your prior conviction?

[PETITIONER]:    I had a theft, some theft, theft charges.

THE COURT:       Were they thefts of autos?

[PETITIONER]:    Theft of 10,000, yeah.

THE COURT:       Of auto?

-11-

[PETITIONER]:        Yeah.

Based on the petitioner's testimony, we are unable to determine the petitioner's classification range. The petitioner failed to introduce a copy of his criminal record for the trial court's review or for review on appeal. It is unclear from the record if the petitioner had one prior theft conviction or multiple prior theft convictions; therefore, we are unable to determine if the petitioner was actually prejudiced.  The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. See T.C.A. § 40-30-110(f).  We conclude that the petitioner has failed to prove by clear and convincing evidence that his attorney's failure to investigate his prior criminal record resulted in prejudice and that but for his attorney's failure to investigate that he would not have pled guilty but would have gone to trial.

## CONCLUSION

Based on the foregoing and record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE